NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HONORIO YONT, | : | |
| | : | Civil Action No. 14-5033 (SDW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CAROLYN W. COLVIN, | : | August 4, 2015 |
| Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Honorio Yont's ("Plaintiff" or "Yont") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Richard West's ("ALJ" or "ALJ West") decision that Yont is not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act (the "Act") and, therefore, not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI").

This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons discussed below, this Court **REMANDS** this matter for further review.

**I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

*A. Personal and Employment History*

Plaintiff was born on December 15, 1959. (R. 12.) He was forty-six years old on the alleged onset date of his disability, which was January 2, 2006. (R. 12.) In August 2012, at the time of the ALJ hearing, Plaintiff was fifty-two years old. (R. 16.) Plaintiff has an education level of at least high school, can communicate in English, and has past relevant work experience as a mechanic. (*Id.*)

*B. Medical History*

In 2002, Plaintiff was injured when a crane that Plaintiff was operating collapsed. (R. 318.) Alexander Hoffman, M.D. ("Dr. Hoffman") reported that Plaintiff's crushing injuries on the left foot were worse than the injuries to the right foot, requiring both surgery and skin grafting. (R. 318.) The left-foot injury was complicated by a postoperative infection that required further debridement of the skin tissue. (R. 318.) Plaintiff was in the hospital for approximately a month. (R. 318.)

On December 3, 2007, Dr. John F. Kerns ("Dr. Kerns") of Urologic Specialties, P.A., stated that Plaintiff "is a diabetic with a problem of recurrent episodes of inflammation of the foreskin. He appears to get these recurrent infections which is common with diabetics." (R. 253.) Dr. Kerns then recommended that Plaintiff schedule a circumcision, which Plaintiff underwent shortly thereafter. (R. 318.)

On February 20, 2009, Plaintiff's blood test indicated that Plaintiff had high levels of triglycerides. (R. 303.) On October 8, 2010, Dr. Hoffman reported that Plaintiff had been taking medications for hypertension but that Plaintiff's hypertension was not well controlled. (R. 318,

320.) Dr. Hoffman also found that Plaintiff was obese, measuring 5 feet 7½ inches tall and weighing 228 pounds. (R. 319.)

On October 8, 2010, Dr. Hoffman reported that Plaintiff had been diagnosed with and on medication for diabetes several years. (R. 318.) Dr. Hoffman also noted that Plaintiff's diabetes was well controlled by use of medication. (R. 320.) As of October 8, 2010, Plaintiff could walk without much difficulty and without an assistive device. (R. 318, 320.)

Dr. Hoffman also indicated that Plaintiff was depressed. (R. 319.) Dr. Hoffman reported that Plaintiff "has had problems with his left shoulder with decreased range of motion and pain in the shoulder and decreased grip strength in the left arm. He was told by his physician that it was an arthritis related to his diabetes." (R. 318.) The left arm had a decreased grip strength of "3/5" as compared to a grip strength in the right arm of "5/5." (R. 319-20.) Dr. Hoffman reported that Plaintiff "has decreased range of motion at the left shoulder, cannot go above the horizontal, and cannot touch the opposing ear. He has tenderness and palpation of the left shoulder." (R. 320.)

The following day, on October 9, 2010, Alec Roy, M.D. ("Dr. Roy"), examined Plaintiff for a mental state evaluation. (R. 315.) Plaintiff had not been taking any psychiatric medications, had not seen a psychiatrist, and had not seen a counselor. (*Id.*) Dr. Roy stated that Plaintiff "looks [the] picture of misery. He looked down through most of the appointment. He is very depressed and cried a good bit. . . . He has some suggestions of hopelessness and helplessness and inability to see a future." (R. 316.) Dr. Roy concluded his report with a diagnosis of major depression and gave Plaintiff a global assessment of functioning ("GAF") score of "about 38." (R. 317.)

On October 10, 2010, Samuel Wilchfort, M.D. ("Dr. Wilchfort"), stated that a right-foot film revealed that Plaintiff had a large spur on his inferior calcaneus. (R. 327.)

On July 29, 2011, Dr. Hoffman saw Plaintiff again and noted that he was 5 feet 8 inches tall, weighed 218 pounds, and could walk without a cane. (R. 331.) On July 29, 2011, Plaintiff still had decreased range of motion in his left shoulder and constant discomfort. (R. 330.) Dr. Hoffman stated that Plaintiff had a bursitis-type of syndrome in his left shoulder. (R. 332.)

*C. Hearing Testimony*

On August 14, 2012, Plaintiff had a hearing before ALJ West ("Hearing"). (R. 21-58.) At the hearing, Plaintiff testified that he did not see any mental health professionals. (R. 24-25.) Regarding his emotional problems, Plaintiff said that he feels like he wants to die. (R. 41.) He also said that some days he does not get out of bed. (R. 42.) He also testified that a slab of metal had fallen on the toes of his right foot sometime after the crane accident. (R. 32.) At the time of the hearing, Plaintiff's feet were very swollen. (R. 32.) Plaintiff testified that he passes out maybe two to four times a month because of his diabetes. (R. 38-39.) Finally, Plaintiff testified that in the last few months he had lost twenty to thirty pounds. (R. 43-44.)

ALJ West then posed to vocational expert, Rocco Meola, a hypothetical individual who was fifty-two years old, graduated from high school, was able to communicate in English, was limited to light activity, could frequently reach overhead with his left arm, had limited memory, could occasionally interact with others, and could have occasional changes to his essential job duties. (R. 45-46.) The vocational expert said that, with those limitations, there were several types of jobs (specifically, weighing, inspecting, and sorting) that a person could do. (R. 47.) These jobs numbered around 1,500 in the northern New Jersey and metro New York region. (R. 47.) In the second hypothetical, ALJ West added to the limitations in the first hypothetical, that claimant would only be able to use the left arm for no more than four hours a day.[1] (R. 49.) The vocational

---

[1] It is unclear how ALJ West concluded that four hours specifically should be a limiting factor.

4

expert replied that there would be no jobs for such an individual. (R. 50.) In the third hypothetical, ALJ West removed the limitation on the left arm and instead added the limitations that the person would not be able to walk for more than four hours a day or stand for more than six hours a day. (*Id.*) The vocational expert said that all the jobs available to the first hypothetical individual would still be available to the third. (*Id.*) In the fourth hypothetical, ALJ West returned to the facts in the first but limited the individual to walking for only two hours a day. (*Id.*) The vocational expert said that no jobs would exist for such an individual. (*Id.*) In the fifth hypothetical, ALJ West returned to the facts in the first but limited the individual to being able to complete only six hours of work in an eight-hour day. (R. 50-51.) The vocational expert replied that no jobs would exist for such an individual. (R. 51.) In the final hypothetical, ALJ West returned to the facts in the first hypothetical but added the limitation that the individual "would be unable to handle routine work stressors on a . . . sustained basis." (*Id.*) The vocational expert replied that no jobs would exist for that person. (*Id.*)

  On cross-examination, the vocational expert testified that most employers at the above-listed jobs would not hire someone who needed to use more than one sick day in his or her first thirty days on the job. (R. 53.) He further testified that the same would be true for someone who needed more than one unscheduled medical break within the first thirty days on the job. (R. 53-54.) The vocational expert also testified that most of the above-mentioned employers would not tolerate giving an employee an additional fifteen-minute break daily if the employee were also unable to meet his or her production quotas. (R. 54-55.) Further, an employer would not keep an employee who was unable to use one arm for an hour and a half a day if such a limitation prevented the employee from meeting production quotas. (R. 55-56.) Finally, the vocational expert testified that a GAF score of 38 indicates that an employee "might have some difficulties interacting with

people in a work environment or an educational environment or a social environment [and that] he would have more than moderate difficulties." (R. 56.) For the vocational expert, a GAF score around 50 is typically the cutoff for whether a person is able to interact with others in a work setting. (R. 56-57.) The difficulties a person with a GAF score of 38 might have include "[i]nteracting with people, interacting with supervisors, getting the job done, [and] following directions." (R. 57.) The vocational expert testified that a GAF score of 38 alone would not preclude a person from employment at one of the above-listed jobs but that it is a factor in making a determination regarding competitive employment. (*Id.*)

### *D. Procedural History*

On June 15, 2010, Plaintiff filed an application for DIB and another application for SSI. (R. 184-91.) The applications were denied on January 5, 2011. (R. 104-09.) On March 8, 2011, Plaintiff filed a request for reconsideration. (R. 112.) On September 16, 2011, both claims were denied again. (R. 113-18.) On September 26, 2011, Plaintiff requested a hearing by an administrative law judge. (R. 119.) On October 28, 2011, Plaintiff's request was granted. (R. 120-23.) On August 14, 2012, the Hearing was held before ALJ West. (R. 21-58.) On August 29, 2012, ALJ West issued a decision finding that Plaintiff has the following severe impairments: (1) diabetes mellitus; (2) hypertension; (3) obesity; (4) post-crash injury to both feet; (5) depression; (6) hyperlipidemia; and (7) left shoulder injury. (R. 12.) However, ALJ West determined that Plaintiff was not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Act. (R. 7-20.).

On October 29, 2012, Plaintiff sought review by the Appeals Council. (R. 240-41.) On June 7, 2014, the Appeals Council denied Plaintiff's request for review. (R. 1-5.) On January 12, 2015, Plaintiff filed with the Office of General Counsel of the Social Security Administration ("SSA") a Statement of Contention pursuant to Local Civil Rule 9.1. (Dkt. No. 6.) On January 20,

2015, the SSA denied Plaintiff's request to remand the case to the Commissioner. (Dkt. No. 7.) On August 11, 2014, Plaintiff filed a Complaint in this Court, appealing the Commissioner's decision. (Dkt. No. 9.)

**LEGAL STANDARD**

*A. Standard of Review*

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's findings of fact if there exists substantial evidence to support the decision. *Id.*; *Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). Stated differently, substantial evidence consists of "more than a mere scintilla, [but] it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (quoting *Fargonli v. Halter*, 247 F.3d 34, 35 (3d Cir. 2001)).

*B. The Five–Step Disability Test*

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 480 (3d. Cir. 2007). If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509

and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; SSR 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then

requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the SSA is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**DISCUSSION**

At step one of the disability analysis, ALJ West found that Yont is not engaged in substantial activity. (R. 12.) At step two, ALJ West found that Yont had suffered from a combination of severe impairments for longer than a period of twelve months. *See* 20 C.F.R. Sections 404.1509 and 416.909; (R. 12-13.) At step three, ALJ West determined that Yont does not have "an impairment or [a] combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 13.)

Therefore, ALJ West's analysis proceeded to step four, which requires administrative law judges to first make an RFC assessment of the claimant. 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). In the RFC assessment, the administrative law judge is required to consider all of the claimant's impairments, and not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 404.1545(e), 416.945(a)(2), 416.945(e); SSR 96-8p. ALJ West found that

> the claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can walk only 4 hours, frequent overhead reaching with left upper extremity, can understand, remember and carry out simple instructions, can have occasional interaction with general public and coworkers and can have occasional changes to essential job functions.

(R. 14.) ALJ West also added that the "claimant has the [RFC] for lifting and carrying objects weighing up to 20 pounds and frequently lifting and carrying objects weighing up to 10 pounds." (R. 15.) In making this determination, ALJ West was to consider both objective medical evidence and other relevant evidence. (R. 14 (quoting SSR 96-7p).) In considering other relevant evidence, "the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p.

Here, ALJ West determined that Yont has diabetes mellitus, hypertension, obesity, post-crash injury to both feet, depression, hyperlipidemia, and left shoulder injury. (R. 12.) Considering Yont's depression, ALJ West determined that Yont "possesses mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and has never experienced any episodes of repeated decompensation." (R. 13.)

Other relevant evidence that ALJ West considered was a function report that indicated Yont "receives assistance from his wife with personal care, does not prepare his meals, does not shop and does not engage in social activities." (R. 15.) Further, ALJ West provided that Yont

11

estimates that "he can only walk for one block and uses crutches." (*Id.*) However, ALJ West concluded that "claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.*) ALJ West also noted that "[t]here is no treating source opinion evidence contained within the record." (*Id.*)

Based on his review of the record and the vocational expert's testimony, ALJ West determined that Yont was incapable of performing his past relevant work as a mechanic. (R. 16.) Since ALJ West determined that Yont is unable to perform his past relevant work, ALJ West then proceeded to the fifth and final step in the analysis to determine whether Yont is capable of making an adjustment to other work.

At step five, ALJ West considered the vocational expert's testimony, including his hypotheticals, with the RFC determination. *See* 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). For the third hypothetical presented to the vocational expert at the Hearing, with the RFC assessment above, the vocational expert determined that there were three jobs—weigher, inspector, and sorter—that Yont could perform and that existed in the aggregate of 1,500 in the region. (R. 17.) The third hypothetical presented to the vocational expert with the RFC assessment, however, included facts that are not consistent with or supported by the record. *See Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004) (the hypotheticals to a vocational expert should reflect all of a claimant's impairments to be considered substantial evidence); *see also Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999).

In the instant matter, the current record does not support the third hypothetical and the RFC assessment.[2]  First, ALJ West does not clearly indicate the evidence upon which he relied to

---

[2] For the hypotheticals, ALJ West started with the basic background information then included that the claimant was limited to light activity, could frequently reach overhead with his left arm, had limited memory, could occasionally

12

determine that Yont is capable of walking for four hours a day, although he cites to Dr. Hoffman's reports indicating that Yont walked with "normal gait." (R. 14, 50.) On October 10, 2010, Dr. Wilchfort stated that a right-foot film revealed that Plaintiff had a large spur on the inferior calcaneus. (R. 327.) At the hearing, Yont testified that his feet were very swollen and that he could not walk very much. (R. 32.) Also, ALJ West noted that Yont was not able to walk more than one block and had to use crutches. (R. 15.) Therefore, ALJ West's finding that Yont is capable of walking for four hours a day requires clarification.

Next, the record does not support the third hypothetical and the RFC assessment that Yont is capable of frequently reaching overhead with his left arm. (R. 14, 45-47, 50.) On October 8, 2010, Dr. Hoffman reported that Plaintiff has a decreased range of motion in his left shoulder, cannot lift his left arm above the horizontal position, cannot touch his opposing ear, has pain in his left shoulder, has decreased grip strength in the left arm, and, possibly, has arthritis in the left arm. (R. 318-20.) As of July 29, 2011, Plaintiff still had a decreased range of motion in his left shoulder, constant discomfort, and a bursitis-type of syndrome. (R. 330, 332.) This limitation was not presented in the third hypothetical and ALJ West did not clearly indicate what he relied upon to support the finding that Yont is capable of "frequent overhead reaching with left upper extremity." (R. 14.)

Additionally, the third hypothetical omitted the fact that Yont has a GAF score of 38. (R. 317.) For the vocational expert that testified, a GAF score around 50 is typically the cutoff for whether a person is able to interact with others in a work setting. (R. 56-57.) The difficulties a person with a GAF score of 38 might include "[i]nteracting with people, interacting with

---

interact with others, and could have occasional changes to his essential job duties. For the third hypothetical, ALJ West did not include limitation of the left arm and added the limitations that the claimant would not be able to walk for more than four hours a day or stand for more than six hours a day.

supervisors, getting the job done, [and] following directions." (R. 57.) The vocational expert testified that a GAF score of 38 alone would not preclude a person from employment at one of the three identified jobs but that it is a factor in making a determination regarding competitive employment. (*See* R. 16-17.) It does not appear, however, that ALJ West considered Yont's GAF score in the third hypothetical. Also, Yont would possibly need to use more than one unscheduled medical break or more than one sick day in his first thirty days on a job, which would need to be considered. (*See* R. 52-55.)

In light of the discussion above, ALJ West's determination that other work exists that Yont could perform is unsupported by substantial evidence.

**CONCLUSION**

For the reasons set forth above, this Court finds that ALJ West's decision is not supported by substantial evidence. Accordingly, this Court **REMANDS** this matter for further review.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties